O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RICHARD LEE HILL,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:15-CV-03542 (VEB)<br><br><br>DECISION AND ORDER |

## I. INTRODUCTION

In May of 2012, Plaintiff Richard Lee Hill applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.   Plaintiff, represented by Potter Cohen and Samulon, Joshua W.

1   Potter, Esq., of counsel, commenced this action seeking judicial review of the

2   Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

3       The parties consented to the jurisdiction of a United States Magistrate Judge.

4   (Docket No. 9, 10, 13, 14, 17). On April 4, 2016, this case was referred to the

5   undersigned pursuant to General Order 05-07. (Docket No. 24).

6

7                          **II. BACKGROUND**

8       Plaintiff applied for benefits on May 23, 2012, alleging disability beginning

9   November 3, 2011, due to various physical and psychological impairments. (T at

10  12).[1]   The application was denied initially and on reconsideration.   Plaintiff

11  requested a hearing before an Administrative Law Judge ("ALJ").   On September

12  12, 2013, a hearing was held before ALJ John Moreen. (T at 34).  Plaintiff appeared

13  with his attorney and testified. (T at 37-66).  The ALJ also received testimony from

14  Jane Haile, a vocational expert. (T at 66-70).

15      On January 30, 2014, the ALJ issued a written decision denying the

16  application for benefits.    (T at 9-27).    The ALJ's decision became the

17  Commissioner's final decision on April 28, 2015, when the Appeals Council denied

18  Plaintiff's request for review. (T at 1-6).

19  _____
    [1] Citations to ("T") refer to the administrative record at Docket No. 20.

20                                        2

                DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

On May 12, 2015, Plaintiff, acting by and through his counsel, filed this action seeking judicial review of the Commissioner's decision. (Docket No. 1). The Commissioner interposed an Answer on November 9, 2015. (Docket No. 19).  The parties filed a Joint Stipulation on March 30, 2016. (Docket No. 23).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for calculation of benefits.

## III. DISCUSSION

### A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1  1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

2  vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

3  The Commissioner has established a five-step sequential evaluation process

4  for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step

5  one determines if the person is engaged in substantial gainful activities. If so,

6  benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the

7  decision maker proceeds to step two, which determines whether the claimant has a

8  medially severe impairment or combination of impairments. 20 C.F.R. §§

9  404.1520(a)(4)(ii), 416.920(a)(4)(ii).

10  If the claimant does not have a severe impairment or combination of

11  impairments, the disability claim is denied. If the impairment is severe, the

12  evaluation proceeds to the third step, which compares the claimant's impairment(s)

13  with a number of listed impairments acknowledged by the Commissioner to be so

14  severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii),

15  416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or

16  equals one of the listed impairments, the claimant is conclusively presumed to be

17  disabled. If the impairment is not one conclusively presumed to be disabling, the

18  evaluation proceeds to the fourth step, which determines whether the impairment

19  prevents the claimant from performing work which was performed in the past. If the

20

claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.     Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is

1    supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

2    1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

3    "The [Commissioner's] determination that a plaintiff is not disabled will be

4    upheld if the findings of fact are supported by substantial evidence." *Delgado v.*

5    *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial

6    evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119

7    n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d

8    599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a

9    reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

10   *Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and

11   conclusions as the [Commissioner]  may reasonably draw from the evidence" will

12   also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review,

13   the Court considers the record as a whole, not just the evidence supporting the

14   decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.

15   1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

16   It is the role of the Commissioner, not this Court, to resolve conflicts in

17   evidence.  *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

18   interpretation, the Court may not substitute its judgment for that of the

19   Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

20

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 3, 2011 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2017. (T at 14-15). The ALJ found that Plaintiff's generalized anxiety disorder and personality disorder with avoidant dependent traits were "severe" impairments under the Act. (Tr. 15).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 15).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, provided the work

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

did not require more than simple, routine, repetitive tasks, with occasional contact with others. (T at 17).

The ALJ found that Plaintiff could not perform his past relevant work as an industrial truck operator. (T at 21). Considering Plaintiff's age (50 on the alleged onset date), education (at least high school), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 22).

As such, the ALJ found that Plaintiff was not entitled to benefits under the Social Security Act from November 3, 2011 (the alleged onset date) through January 30, 2014 (the date of the ALJ's decision). (T at 23). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.    Disputed Issues**

As set forth in the parties' Joint Stipulation (Docket No. 23, at p. 4), Plaintiff offers five (5) arguments in support of his claim that the Commissioner's decision should be reversed. First, he contends that the ALJ did not properly weigh the medical opinion evidence. Second, he argues that the ALJ's Listings analysis was flawed. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, he contends that the ALJ did not adequately account for the impact of mental

impairments on his ability to work.  Fifth, Plaintiff challenges the Appeals Council's

denial of his request for review. This Court will address each argument in turn.

## IV. ANALYSIS

### A.    Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight

than an examining physician's opinion, and an examining physician's opinion is

given more weight than that of a non-examining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). If the treating or examining physician's opinions are not contradicted, they

can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If

contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons

that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d

1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting

medical evidence, and/or the absence of regular medical treatment during the alleged

period of disability, and/or the lack of medical support for doctors' reports based

substantially on a claimant's subjective complaints of pain, as specific, legitimate

reasons for disregarding a treating or examining physician's opinion. *Flaten v.*

*Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Id*.

### 1.      Dr. Castner

In July of 2013, Dr. E.J. Castner, Plaintiff's treating psychiatrist, completed a medical source evaluation form.  Dr. Castner assessed no limitation with regard to Plaintiff's ability to remember work-like procedures or understand/remember/carry out very short and simple instructions, but concluded that Plaintiff's impairments precluded him from completing a normal workday without interruptions from psychologically based symptoms for less than 15% of the day. (T at 286).

Dr. Castner also found Plaintiff limited with regard to getting along with others, setting realistic goals, or making plans independently of others, and maintaining concentration, persistence, or pace. (T at 286).  Dr. Caster reported that Plaintiff suffered from generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, and apprehensive expectation, resulting in marked restriction of activities of daily living and maintaining social functioning. (T at 287).

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

He also noted that Plaintiff experienced recurrent severe panic attacks. (T at 287). Dr. Caster also reported that Plaintiff suffered from deeply ingrained, maladaptive patterns of behavior associated with persistent disturbances of mood or affect, resulting in marked restriction of activities of daily living and maintaining social functioning. (T at 288).

The ALJ gave Dr. Castner's opinion "little weight," finding it inadequately supported by objective or diagnostic evidence and inconsistent with the doctor's own examination notes. (T at 19). For the following reasons, this Court finds that the ALJ erred in discounting Dr. Castner's assessment and the ALJ's decision in this regard is not supported by substantial evidence.

The critical error undermining the ALJ's decision is the conclusion that Dr. Castner's examination notes do not support his restrictive assessment. In fact, as discussed below, Dr. Castner's opinion and notes are consistent with the conclusion that Plaintiff could function relatively well when shielded from the demands of a work environment, but would – in Dr. Castner's view – be likely to experience severe symptoms if exposed to such demands.

Plaintiff had an extensive work history at the time of his alleged onset of disability – including 32 years working for a supermarket chain, with 22 of those years loading and operating a forklift. (T at 38). Plaintiff had a history of psychiatric

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

symptoms, which became worse following a back injury. (T at 58, 261).   Dr. Castner's treatment notes indicate that Plaintiff's symptoms (which included paranoia, agoraphobia, and anxiety) began significantly increasing in intensity in the early months of 2012. (T at 256-60).   In June of 2012, Dr. Castner noted that Plaintiff was not returning to work and reported that Plaintiff experienced significant relief at the decision. (T at 256).

The ALJ did not discuss these treatment notes.   Instead, the ALJ cited a treatment note from December 2011, which indicated that Plaintiff was experiencing paranoid thoughts (T at 18, 259), and then jumped to Dr. Castner's notes from the fall of 2012 and January of 2013, which described Plaintiff as "generally doing well," not experiencing panic attacks or depression, and "doing much better." (T at 18, 254-55).

The ALJ found the latter set of observations (from the fall of 2012 and early 2013) consistent with Plaintiff having retained the ability to perform "simple, routine, repetitive, tasks and [have] occasional contacts with others." (T at 18).   Thus, the ALJ believed that Dr. Castner's July 2013 assessment, which was quite restrictive, was contradicted by his treatment notes.   However, the ALJ's finding ignores nine (9) months of notes, which described Plaintiff as having severe symptoms, which were believed to be related to work stress and which were relieved

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

to a degree once he stopped working.  In other words, the ALJ did not adequately account for the fact that Plaintiff's documented improvement in the fall of 2012 and early 2013 came *after* he stopped working.

The most obvious reading of the evidence is that Plaintiff experienced an increase in symptoms while attempting to continue work and then experienced symptom relief once freed from the demands of regular work activities.  The ALJ does not appear to have accounted for this explanation of the evidence.

If the ALJ had recognized this issue and offered a reasonable, evidence-based alternative explanation, this Court would have been bound to defer to that interpretation.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment).

However, no such explanation is provided – the ALJ simply cites the fall 2012/early 2013 treatment notes, omits the discussion of the earlier notes, and concludes that Plaintiff's documented improvement during that brief period of time contradicts Dr. Castner's opinion.  This was plainly error, particularly because a review of the complete record from 2012 documents a fairly steady increase in symptoms while Plaintiff was attempting to work, followed by relatively rapid relief once the stress of work was removed.

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

The Ninth Circuit has expressly cautioned against relying too heavily on the "wax and wane" of symptoms in the course of mental health treatment. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  This caution is necessary because "[c]ycles of improvement and debilitating symptoms are a common occurrence," and, as such, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

The ALJ failed to exercise the caution indicated by the Ninth Circuit.  The ALJ's decision to discount Dr. Castner's opinion thus cannot be sustained.

### 2.      Consultative Examiners

In October of 2012, Dr. Ineoma Ijeaku performed a consultative psychiatric examination.  Dr. Ijeaku diagnosed anxiety disorder, NOS and rule out panic disorder. (T at 251).  He assigned a Global Assessment of Functioning ("GAF") score of 60 (T at 252), which is indicative of moderate symptoms or difficulty in

social, occupational or educational functioning. *Metcalfe v. Astrue*, No. EDCV 07-1039, 2008 US. Dist. LEXIS 83095, at *9 (Cal. CD Sep't 29, 2008).

Dr. Ijeaku found Plaintiff's ability to understand/remember/carry out complex instructions to be severely impaired, but his ability to understand/remember/carry out simple instructions only mildly impaired. (T at 252).   He assessed moderate impairment with regard to Plaintiff's ability to maintain concentration, attendance, and persistence and moderate impairment concerning his ability to perform activities within a schedule, maintain regular attendance, complete a normal workday/workweek without interruptions from psychologically-based symptoms, and respond appropriately to changes in a work setting. (T at 252).   Dr. Ijeaku characterized Plaintiff's prognosis as "poor." (T at 252).

In October of 2013, following the administrative hearing, the ALJ referred Plaintiff for another consultative examination, which was performed by Dr. Rose Colonna.  The only medical record reviewed by Dr. Colonna was Dr. Ijeaku's report. (T at 292).  Dr. Colonna diagnosed generalized anxiety disorder NOS, rule out panic disorder, and personality avoidant dependent traits.  She assigned a GAF score of 60. (T at 295).  Dr. Colonna found that Plaintiff's overall cognitive ability fell within the borderline to average range. (T at 295).   She opined that Plaintiff could understand/remember/carry out short, simplistic instructions without difficulty and

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

could make simplistic work-related decisions without special supervision. (T at 295).

Dr. Colonna noted that Plaintiff had "mild oddities manifesting in anxiety" and that

Plaintiff was "somewhat of a social recluse." (T at 295).   As such, she believed

Plaintiff would have a mild limitation with regard to interacting appropriately with

supervisors, co-workers, and peers. (T at 295).   Dr. Colonna found it "difficult to

ascertain why after many years of gainful employment, [Plaintiff's] anxiety ha[d]

become overwhelming and [rendered him] unable to work." (T at 296).

The ALJ afforded "some weight" to Dr. Ijeaku's assessment.  The ALJ found

that, although Dr. Ijeaku did not address Plaintiff's ability to interact with others, his

assessment otherwise supported the ALJ's residual functional capacity

determination. (T at 18).

However, as noted above, Dr. Ijeaku characterized Plaintiff's prognosis as

"poor," and assessed moderate impairment with regard to Plaintiff's ability to

perform activities within a schedule, maintain regular attendance, complete a normal

workday/workweek without interruptions from psychologically-based symptoms,

and respond appropriately to changes in a work setting. (T at 252).

These findings are significant, in that they are consistent with the conclusion

of Dr. Castner, Plaintiff's treating psychiatrist, who concluded that Plaintiff's

impairments precluded him from completing a normal workday without

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

1    interruptions from psychologically based symptoms for less than 15% of the day. (T

2    at 286).   The ALJ did not address this fact and did not reconcile this apparent

3    inconsistency between the RFC determination, on the one hand, and the assessments

4    of Dr. Castner and Dr. Ijeaku on the other.   This was a significant omission.   The

5    vocational expert testified that a hypothetical claimant with moderate impairment in

6    the ability to maintain concentration, perform activities within a schedule, and

7    maintain regular attendance would not be able to sustain continued employment. (T

8    at 70).

9         The ALJ gave Dr. Colonna's opinion "great weight," finding it "consistent

10   with the opinions of the consultants and the record as a whole." (T at 17).   However,

11   Dr. Colonna's opinion, which assessed only mild limitations (T at 297-98), was not

12   consistent with Dr. Ijeaku's opinion, which indicated several moderate impairments.

13   (T at 252).   The ALJ did not address or reconcile this inconsistency and/or explain

14   why Dr. Colonna's opinion was entitled to great weight than Dr. Ijeauku's.

15   Moreover, the ALJ's reference to the "record as a whole" includes the ALJ's

16   consideration of Dr. Castner's treatment notes.   As discussed above, the ALJ did not

17   account for the most obvious and plain reading of the treatment notes, namely, that

18   Plaintiff experienced symptom relief only after he stopped working.   Lastly, as noted

19   above, the only medical record reviewed by Dr. Colonna was Dr. Ijeaku's report. (T

20

17

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

at 292).   In contrast, Dr. Castner had a lengthy treating relationship with Plaintiff (which included the opportunity to observe Plaintiff both while he was working and after he stopped working) and Dr. Ijeuaku reviewed Plaintiff's medical and psychiatric records. (T at 249).   This should have caused the ALJ to exercise greater caution before deciding to accept Dr. Colonna's assessment, rather than the more restrictive findings of Dr. Castner and Dr. Ijeuaku.

### 3.        State Agency Review Consultants

In November of 2012, Dr. Judith Levinson, a non-examining State Agency review consultant, reviewed the record and opined that Plaintiff had no restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 78).   In particular, Dr. Levinson found no significant limitations with regard to Plaintiff's ability to understand/remember/carry out very short simple instructions, sustain an ordinary routine without special supervision, and make simple work-related decisions. (T at 80).   She assessed moderate limitation with respect to working in coordination with or in proximity to others and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (T at 80).   Dr. Levinson opined that Plaintiff could adapt to simple changes,

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

1    accept instructions from a supervisor, tolerate limited contact with others, maintain

2    concentration, persistence, and pace, and sustain a schedule for simple routines. (T at

3    80-81).

4        Dr. R. Singh, another non-examining State Agency review consultant,

5    rendered a similar assessment in March of 2013. (T at 88-92).

6        The ALJ assigned "great weight" to the assessments of the State Agency

7    review consultants. (T at 17).  However, the opinion of a non-examining, State

8    Agency physician does not, without more, justify the rejection of an examining

9    physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer*

10   *v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). The rejection of an examining

11   physician opinion based on the assessment of a non-examining medical consultant

12   may be proper, but only where there are sufficient reasons to reject the examining

13   physician opinion independent of the non-examining physician's opinion. *See e.g.,*

14   *Lester*, 81 F.3d at 831; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

15       Here, there were insufficient reasons to reject Dr. Castner's assessment

16   independent of the non-examining physicians' opinions. As discussed above, the

17   ALJ believed that Dr. Castner's assessment was contradicted by the treatment notes.

18   However, that conclusion is based on a selective reading of the notes and does not

19   account for the trend most plainly documented in the record, namely, that Plaintiff

20

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

experience symptom improvement after he was relieved of the stress demands of regular work activity. Moreover, the ALJ failed to adequately account for the consistency between Dr. Castner's opinion and Dr. Ijeaku's assessment. Lastly, both of the State Agency review consultants rendered their opinions prior to July of 2013 and, thus, they did not have the benefit of Dr. Castner's report.

For the foregoing reasons, the ALJ's consideration of the medical opinion evidence was flawed and not supported by substantial evidence.

**B.    Listings Analysis**

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, he or she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also* 20 C.F.R. §§ 404.1525(a); 416.925(a).

An impairment meets a Listing if the impairment matches all of the medical criteria specified in the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

1999). An impairment or combination of impairments that satisfies some, but not all of the criteria, does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment. To satisfy this burden, the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

If a claimant's impairment does not satisfy the Listings criteria, he or she may still be disabled if the impairment "equals" a listed impairment. 20 C.F.R. § 404.1520(d). Equivalence will be found if the medical findings are (at a minimum) equal in severity and duration to the Listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.924(e), 416.926.

If a claimant has multiple impairments, the ALJ must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996). "A finding of equivalence must be based on medical

evidence only." *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(citing 20 C.F.R. § 1529(d)(3)).

"[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia*, 900 F.2d at 176 (9th Cir. 1990). A remand may be required if the ALJ fails adequately to consider a Listing that plausibly applies to the claimant's case. *See Lewis*, 236 F.3d at 514.

In this case, the ALJ considered whether Plaintiff met the requirements of Listings § 12.06 (B)(Anxiety).  To meet that Listing, a claimant must have medically documented findings of anxiety, resulting in at least 2 of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.

The ALJ found no restriction in Plaintiff's activities of daily living, moderate difficulty in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation of an extended duration. (T at 16).  The ALJ thus concluded that the § 12.06 requirements had not been satisfied. (T at 17).  However, Dr. Caster, Plaintiff's treating psychiatrist, opined that Plaintiff suffered from generalized persistent anxiety accompanied by motor tension,

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

autonomic hyperactivity, and apprehensive expectation, resulting in marked restriction of activities of daily living and maintaining social functioning. (T at 287). As outlined above, the ALJ did not give proper consideration to Dr. Castner's opinion.

In addition, in concluding that Plaintiff had no restriction as to activities of daily living and only moderate difficulties with regard to social functioning, the ALJ relied heavily upon Plaintiff's reported activities. (T at 16). As discussed further below, the ALJ's consideration of Plaintiff's daily activities was flawed. These errors necessarily undermine the ALJ's Listings analysis, which cannot be sustained on this record.

## C.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

1  and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834;

2  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

3    However, subjective symptomatology by itself cannot be the basis for a

4  finding of disability. A claimant must present medical evidence or findings that the

5  existence of an underlying condition could reasonably be expected to produce the

6  symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R.

7  § 404.1529(b), 416.929; SSR 96-7p.

8    In this case, Plaintiff testified as follows: He was 52 years old at the time of

9  the hearing.  He graduated from high school, but received no education or formal

10  training beyond that. (T at 37).  He lives alone in his own home. (T at 38).  He

11  worked for approximately 32 years. (T at 38).  For 22 of those years, he was a

12  forklift receiver in a warehouse. (T at 38-39).  In November of 2011, he experienced

13  an aggravation of panic disorder.  His symptoms include irritability, anxiety,

14  lightheadedness, dizziness, and difficulty communicating. (T at 41).  He gets shaky

15  and sweaty.  Medication provides some relief, but he still has panic attacks 3-4 times

16  per day. (T at 42).

17    Plaintiff tried to work during the early months of 2012, but had to leave early

18  because of symptoms, had a difficult time driving to work, and had panic attacks that

19  made it difficult to leave his house. (T at 43-44, 57).  He sees Dr. Castner every 6

20

weeks. (T at 44).  He would see him more frequently, but limits his visits due to cost. (T at 44-45).  He stays at home most days and can perform basic chores (cleaning floors, laundry, preparing ready-made foods). (T at 45-46).  He could not drive due to anxiety on the day of the hearing, so his brother drove him. (T at 46). He speaks to his brother every two or three days and visits his mother and stepfather every few weeks. (T at 47).  He has one friend, who sometimes brings him food. (T at 48-49). He is able to drive to the store and shop for food, although he does so late at night to avoid people. (T at 49-50).

Toward the end of his work career, his panic attacks were so severe that he would hide under a rack 4 to 5 times per day until he calmed down. (T at 51-52). The attacks were unpredictable. (T at 53).

During the day, he stays and at home and frequently stares out the window, to make sure no one is watching him. (T at 53-54).  Medication has improved his symptoms, he has only 3 to 5 panic attacks per day, as opposed to 9 or 10. (T at 54). He feels like he is not in control. (T at 55).  He has difficulty focusing. (T at 55). His panic attacks are better when he stays at home. (T at 55).

The ALJ assigned "little weight" to Plaintiff's subjective complaints. (T at 20).  This Court finds the ALJ's credibility assessment flawed and not supported by substantial evidence.  First, the ALJ placed undue weight on Plaintiff's rather limited

activities of daily living.  For example, the ALJ cited Plaintiff's ability to go grocery shopping and drive his car. (T at 20).  However, Plaintiff testified that he is able to drive to the store and shop for food, but does so late at night to avoid people. (T at 49-50).

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).  "The Social  Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

The ALJ also concluded that Plaintiff's regular mental health treatment "seems to be successfully treating [his] symptoms," thus suggesting that Plaintiff "is not as limited as he alleges." (T at 20). However, as discussed above, the ALJ did not account for the fact that Plaintiff experienced some symptom improvement only after he stopped working (his symptoms were worsening while he worked) and, even then, Plaintiff's symptoms have only "improved" to the extent that he remains in his home most days, in relative isolation, engaging in limited activities, and experiencing 3 to 5 panic attacks per day.

Individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)). Moreover,

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

the ALJ must be careful to interpret evidence of symptom improvement "with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The ALJ in this particular case demonstrated no such awareness.

In addition, Plaintiff's testimony was supported by the assessment of Dr. Castner, his treating psychiatrist.  As discussed above, the ALJ did not give proper consideration to that assessment.

Lastly, Plaintiff had an excellent work history, lasting approximately 32 years, which provides another reason for crediting his claims. *Pazos v. Astrue*, No. 08-6882, 2009 U.S. Dist. LEXIS 33970, at *29 (Cal. C.D. Mar. 30, 2009).

For the reasons outlined above, the ALJ's credibility assessment was flawed and cannot be sustained.

**D.   Step 5 Analysis**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in

substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987).

Here, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 22-23). This conclusion was based on the vocational expert's testimony, which, in turn, was based on a hypothetical from the ALJ that mirrored the ALJ's RFC determination. (T at 68-69). However, on cross-examination, the vocational expert testified that a claimant with moderate impairment in the ability to maintain concentration, perform activities within a schedule, and maintain regular attendance would not be able to sustain continued employment. (T at 70).  Here, as discussed in detail above, the ALJ did not adequately address several key pieces of evidence, including Dr. Castner's assessment, Dr. Ijeaku's opinion, and Plaintiff's testimony, all of which indicated that Plaintiff had at least moderate impairment with regard to his ability to maintain

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

concentration, perform activities within a schedule, and maintain regular attendance. Thus, the ALJ's step five analysis is likewise flawed and cannot be sustained. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value.").

**E.      Additional Evidence**

The Appeals Council is required to consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b).   The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

In the Ninth Circuit, when the Appeals Council considers new evidence in the context of denying the claimant's request for review, the reviewing federal court must "consider the rulings of both the ALJ and the Appeals Council," and the record before the court includes the ALJ's decision and the new evidence. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

Because the Appeals Council's decision to deny the claimant's request for review is not a "final decision" by the Commissioner, the federal courts have no jurisdiction to review it.  Rather, the question presented in such cases is whether "the ALJ's decision is supported by substantial evidence after taking into account the new evidence." *Acheson v. Astrue*, No. CV-09-304, 2011 U.S. Dist. LEXIS 25898, at *11 (E.D. Wash. Mar. 11, 2011); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).  If the new evidence creates a reasonable possibility that it would change the outcome of the ALJ's decision, then remand is appropriate to allow the ALJ to consider the evidence. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

In this case, Plaintiff submitted additional evidence to the Appeals Council in the form of a one-page letter from Dr. Castner, dated February 7, 2014.  In that letter, Dr. Castner explained that although Plaintiff's "panic attacks [had] been fairly well-controlled, … he continue[d] to have high levels of anxiety with poor stress management skills." (T at 300).  Dr. Castner stated that he considered Plaintiff "totally unable to work." (T at 300).

The Appeals Council considered Dr. Castner's letter, but found that it did not provide a basis for overturning the ALJ's decision. (T at 1-2).  However, Dr. Castner's February 2014 letter, if considered by the ALJ, should have created a

reasonable probability of a different outcome.  This is because the letter makes even clearer the ALJ's error discussed at length above, namely, that the ALJ gave great weight to evidence of symptom improvement and (relative) symptom stability without considering that the demands of work stress would, in the view of Plaintiff's treating psychiatrist, cause an aggravation in impairment sufficient to render Plaintiff unable to perform basic work activities.  This provides further support reached by this Court herein.

**F.     Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1401 (9th Cir.1988)).

In this case, this Court finds that a remand for calculation of benefits is the appropriate remedy.  The ALJ failed to provide legally sufficient reasons for discounting the assessment of Plaintiff's treating psychiatrist, Plaintiff's subjective testimony, and limitations noted by a consultative examiner (Dr. Ijeaku).  There are no outstanding issues that need to be resolved before a disability determination can be made.  It is clear from the record that the ALJ would be required to find Plaintiff disabled were such evidence credited.  As such, a remand for calculation of benefits is necessary and appropriate.


# V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this matter for calculation of benefits; and further

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case, without prejudice to a timely application for attorneys' fees.

DATED this 31st day of May, 2016,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – HILL v. COLVIN 2:15-CV-03542 (VEB)